## In re WILMS. *

### Patent Appeal No. 3081.

Court of Customs and Patent Appeals.

Feb. 27, 1933.

Edwin B. H. Tower, Jr., of Milwaukee, Wis., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Appellant filed his application in the United States Patent Office for a patent on improved electric motor controllers. His application discloses his device to be an electric motor controller of that type in which an electromagnetic starting and stopping main or power switch is opened or closed by a manual control switch. The Board of Appeals, in its decision, thus sufficiently describes the device: "The invention is a motor starter switch. It comprises a box having an openable cover. On a panel fixed in the box is mounted a multiple pole switch and a magnet for closing it. The magnet is wired in a shunt circuit and is provided with switches controlled by overload circuit breakers in the motor circuit. The shunt circuit is also provided with manually controlled switches to make or break the circuit to the magnet. An actuator is mounted on the cover and extends through it so as to be operable from the outside. When the cover is opened the parts on the cover are moved away so as to not obstruct access to the main switch mechanism and its electrical circuits."

*Rehearing denied April 12, 1933.

Both tribunals in the Patent Office rejected all the claims, numbered 13, 14, 15, and 16, for lack of patentable subject-matter, and upon the following references: Western Electric Catalog No. 6, Page 252, of Chicago, Ill.; Graham, 1,020,898, March 19, 1912; Wittingham et al., 1,294,213, February 11, 1919; Brobst, 1,530,929, March 24, 1925.

Claim 13 is illustrative of all the rejected claims: "13. An electric motor starting and stopping switch, comprising in combination in an enclosed unitary appliance, a main switch supported in a stationary position and having multiple pole switch contacts operated by a shunt electromagnet, a manual control switch connected in circuit to said electromagnet to control said main switch, a box enclosing said main switch and said control switch and having an openable front cover to enable ready access to said main switch and said control switch, and a control switch actuator carried by said cover and extending therethrough to enable said control switch to be actuated from the outside thereof and removed from obstructing access to said main switch and the electrical circuits thereof upon said cover being opened."

The record contains an affidavit of Walter D. Pfeifer, electrical engineer, who states that the Allen-Bradley Company, now producing appellant's device, before the invention of the same, manufactured a starting switch having the main switch and relay switches arranged within one box and the control switch in another box, connected with the first by suitable cable and wiring; that the present switch is more compact, easy to install, and is supplanting the former switch in a commercial way.

On appeal to this court from the decision of the Board of Appeals, the argument of the appellant, summarized, is that he has disclosed a motor control device which has several features which are an advance in the art. He argues that his device is more compact than heretofore shown by the art; that the openable box lid of his device carries the control switch, thus enabling the operator to swing the door and the attached control switch out of the way when repairs to the main and relay switches are required; that installation of his device is much more economical than the former system of installation of two boxes, one for the main, and one for the control, switch. If there is anything patentable in appellant's disclosure, it resides in these features.

Counsel for appellant states, in his brief: "The electrical system and electric switches

in the Wilms, controller are the same as in the prior controller, but the Wilms controller is distinguished from the prior controller in that the control switch, instead of being a separate remote control switch, is enclosed in the same box as the main switch and mounted upon the cover thereof."

It appears that a prior form of switch, as detailed by Pfeifer, has been on the market since, at least, 1925.

 The alleged invention being confined to this narrow compass, therefore, we are unable to discern, in view of the references, wherein there is invention in appellant's device. The reference Brobst, chiefly relied upon by the Board, discloses a main and overload switch installed in a closed box, with a manually operated handle upon the outside of the box to close the line switch. Graham and the Western Electric Catalog referred to show telephone transmitters. Each of these references show telephone transmitting apparatus mounted in boxes, with ·openable, hinged doors, and with control switches mounted upon said doors. While telephone apparatus such as shown by these references has to do with the transmission of electrical energy of a much different force than is involved in the use of appellant's device, nevertheless we think the respective arts are analagous and that such devices may properly be said to be known to those skilled in the art of transmitting and utilizing electrical energy.

The appellant cites, among others, the following cases, which he claims support his claims here: In re Both, 46 F.(2d) 362, 18 C. C. P. A. 863; Westinghouse Electric & Mfg. Co. v. Metro. Elec. Mfg. Co. (C. C. A.) 281 F. 528; Met. Device Corp. v.Williamsburg Elec. Sup. Co. (C. C. A.) 19 F.(2d) 442; Westinghouse Elec. & Mfg. Co. v. Wadsworth Elec. Mfg. Co. (C. C. A.) 36 F.(2d) 319; Sachs v. Hartford Elec. Sup. Co. (C. C. A.) 47 F.(2d) 743. In the Both Case cited, the device in question was a one piece, molded electrical outlet box. This construction was new and inventive, and patent accordingly was granted, as to this feature. In all the other cases cited, it will be found, on study, that in each case there were elements involved which were clearly inventive and patentable. Take, for example, the cited case of Westinghouse Elec. & Mfg. Co. v. Metro. Elec. Mfg. Co., supra. In that case a box for the inclosure of fuse terminals in one compartment, and supply terminals and live switch contacts in another compartment, was involved. The mechanism was such that,

when the box was opened to inspect or renew a fuse, the switch was cut off and the person opening the box was protected from injury. A locking device to keep the switch in an open condition was also provided. The inventive subject-matter there was not the box that inclosed them, but the other elements which we have above referred to.

The mere matter of compactness does not render appellant's device patentable. In re Staude, 46 F.(2d) 579, 18 C. C. P. A. 894; In re Einstein, 46 F.(2d) 373, 18 C. C. P. A. 885. The other elements and features of appellant's device are shown by the references to be known to the art.

We find no error in the decision of the Board of Appeals and it is affirmed.

Affirmed. ·